IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEEDHAM BUSINESS CONSULTING PA, LLC and DAVID FISHBONE** : | |
| *Plaintiffs* : | |
| : | |
| v. : | |
| : | |
| **CLAIM DOC, LLC** : | JURY TRIAL DEMANDED |
| : | |
| and : | |
| : | |
| **BEN KRAMBECK** : | |
| : | |
| *Defendants* : | |

## COMPLAINT

**AND NOW COME** Plaintiffs Needham Business Consulting PA, LLC ("Needham") and David Fishbone ("Fishbone") (collectively "Plaintiffs"), by and through their undersigned counsel Bochetto & Lentz, P.C. ("B&L"), and aver the following in support of their Complaint against Defendants Claim Doc, LLC, ("Claim Doc") and Ben Krambeck ("Krambeck") (collectively "Defendants"):

### I. INTRODUCTION

1. This action arises from Defendants unlawful usurpation of confidential information prepared and developed by Plaintiffs for use in Claim Doc, a reference based pricing and consulting business providing an Audit Program to assist self-funded health insurance plans in minimizing the cost of claims for medical services provided by hospitals, facilities, physicians and other providers of health care services.

2. Plaintiffs had developed valuable trade secrets and other intellectual property and made them available to Claim Doc, including but not limited to identities of vendors to work

1

with Plaintiffs to provide necessary services in connection with the start up and operation of its business, metrics, workflow, documents, protocols and processes (the "Confidential Information") that were integral to Defendants' business.

3.      This Confidential Information is so valuable that when the parties agreed upon compensation to Plaintiffs for providing it, Defendants agreed to *15% of the gross revenue* of Claim Doc for at least five years as the appropriate price for using it during that time period. Defendants have not to this date provided any notice of default or other reasons for terminating the agreement.

4.      Now, however, Defendants seek to inequitably and improperly retain the Confidential Information without obeying the terms of the parties' agreement and without paying for the Confidential Information.

5.      This Confidential Information was a proprietary system, including metrics and methods of analysis developed by and provided by Plaintiffs and their proprietary vendor contacts, analyzing claims filed by providers of medical services to covered health plan members using proprietary language embedded within Defendants' customers Plan Documents ("Allowable Claim Limits")  to determine the appropriate reimbursement rates for those services applying the Allowable Claim Limits to the claims on a line by line audited basis.  The source of the information used within the proprietary process to complete the audit and re-pricing of hospital and facility claims was the CMS financial statements and cost reports filed by each hospital or other facility annually as reported in the American Hospital Directory and the various repricers provided by Medicare to determine how Medicare pays for various health care services. Other types of claims were re-pricing using various other proprietary methods as set forth in the Allowable Claim Limits. The Confidential Information was provided to Defendants subject to a

clear and unambiguous Confidentiality Agreement, which required that Defendants not duplicate or copy the Confidential Information or use it without Plaintiffs' permission.

6.      However, despite the fact that the Confidential Information became the heart of Defendants' business and has established Defendants in the marketplace, Defendants unlawfully decided to usurp the Confidential Information and cut Plaintiffs out of the business without cause and without any prior notification to Plaintiffs.

7.      Such actions are a clear breach of the confidentiality provisions of the Consulting Agreement.

## II.      JURISDICTION AND VENUE

8.      Jurisdiction is proper in this district pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Defendant and Plaintiff and the amount in controversy, as valued by the injunctive relief sought below, exceeds the sum of $75,000.00 exclusive of interest, fees and cost.

9.      Venue is proper in this district as the contract at issue provides for actions to be brought in Philadelphia and the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391.

## III.      PARTIES

10.      Plaintiff Needham Business Consulting PA, LLC is limited liability company formed under the laws of the Commonwealth of Pennsylvania.  Needham's principal place of business is 2211 S. 11th Street, Philadelphia, PA 19148.

11.      Plaintiff David Fishbone is an adult individual and a citizen of the Commonwealth of Pennsylvania and may be served at 2211 S 11th Street, Philadelphia, PA 19148.

12.      Defendant Claim Doc, LLC is a limited liability company formed under the laws

of the State of Iowa.  Claim Doc's principal place of business is 6110 Windsor Dr. Des Moines, IA  50312.

13.     Defendant Ben Krambeck is an adult individual and a citizen of the State of Iowa, and may be served at 6110 Windsor Dr. Des Moines, IA  50312.

## IV.     FACTUAL BACKGROUND

### A.  The Consulting Agreement

14.     The averments and responses of all preceding paragraphs are incorporated by reference as if fully rewritten herein.

15.     On or about February 1, 2013, Plaintiffs entered into a Consulting Agreement (the "Agreement") with Defendants.  (A true and correct copy of the Agreement is attached hereto as Exhibit "A.")

16.     Pursuant to the Agreement, Defendants specifically sought Plaintiffs' "assistance in developing the creating protocols, work flow, and documentation required by Claim Doc to set up and implement the Claim Review and Audit Program, to provide appeal response and coordinate outside legal defense services for the Plans and their covered members, and to provide consulting services to Claim Doc so that it can provide these services . . . ." **Ex. A** at p. 1.

17.     Pursuant to the Agreement, Defendants specifically "agreed to enter into this Agreement with Contractor for Contractor to provide Consulting Services to them to assist in developing the Claim Doc Claims Review and Audit Program and all of the services required to implement and operate them for the TPAs and Plans utilizing them." **Ex. A** at p. 1.

18.     Pursuant to the Agreement, these Consulting Services were to be provided in return for compensation to Plaintiffs.  At the time the Agreement was entered into, that

4

compensation was "[t]o be determined prior to starting up the actual operations of Claim Doc. Krambeck and Johnson agree that they will not commence Claim Doc operations until Contractor's compensation has been agreed upon." **Ex. A** at §2.

19.     Subsequently, prior to the actual start up of operations, Plaintiffs and Defendants agreed that Plaintiffs compensation would be equal to 15% of the gross revenue.

20.     Defendants further expressly acknowledged that "[Plaintiffs have] shared proprietary and confidential information in order to enable the formation and start-up of Claim Doc and its business operations." **Ex. A** at §2.

21.     The Agreement specifically protects the provision of Confidential Information that is shared by Plaintiffs in the furtherance of Claim Doc's business.

22.     Pursuant to the Agreement that "[i]t is understood by the parties that the successful pursuit of new business development prospects is driven by prudent and timely disclosure of certain information at regular intervals . . . and that unauthorized use or disclosure of confidential information may cause damage to the party that furnished it." **Ex. A** at §3.

23.     The Agreement specifically identifies the following categories as confidential information that are to be protected against disclosure:

> i.     Strategic information -- including but not limited to identification of prospective clients by Claim Doc and any vendors providing services required to create, implement and operate the Claims Review and Audit Program by Contractor, including any workflows, protocols, documents, language, letters, contracts, etc.
>
> ii.    Customer Information – including but not limited to contact information for current clients, vendors who will provide essential services and products, recent prospects and any effective agreements therewith; and
>
> iii.   Partnership Information – including but not limited to vendors, brokers, insurance carriers, lenders, and any effective agreements therewith; and

iv.  Operations Information – including but not limited to products, services, processes, trade secrets, research and development programs, and marketing materials and strategies, intellectual property; and

v.  Policy Information – including but not limited to insurance policies, coverage, expiration, run-outs, terms, conditions and rates; and

vi.  Human Resources – including but not limited to contact information for employees and offices, wages, salaries, bonuses and benefits.

**Ex. A** at §3(A)

24.   Importantly, the Agreement specifically states that confidential and proprietary information brought to Defendants prior to the Agreement "shall be [sic] remain confidential and proprietary and covered by this section, notwithstanding such prior disclosure." **Ex. A** at §3(A)(1)(b).

25.   Further, the Agreement specifically bars Defendants from "the copying or duplication of protected processes and workflow disclosed by [Plaintiffs] to Claim DOC." **Ex. A** at §3(A)(3).

26.   The Agreement further states that "[i]n the event that any party breaches or defaults under the terms of this agreement, then the party that furnished the confidential information may seek appropriate injunctive or punitive relief, and if successful, the defaulting or breaching party agrees to pay the relevant costs and expenses, including but not limited to reasonable attorneys fees." **Ex. A** at §3(A)(6).

27.   Importantly, the Confidentiality portion of the Agreement "its protections, prohibitions and relief shall survive any termination of this Agreement for any reason that occurs between the parties." **Ex. A** at §3(A)(4).

28.   It was only under these terms that Plaintiffs agreed to furnish Defendants with the Confidential Information.

6

**B.  Defendants Unlawful Termination of Plaintiff and Usurpation of Confidential Information.**

29.      Upon the execution of the Agreement, Plaintiffs worked in good faith to build Claim Doc into a successful business.

30.      Claim Doc is a healthcare consultant that provides claim review and auditing services for self-funded health plans.  It provides such plans with claim review and auditing services to ensure that hospital and facility and other out-of-network claims are appropriately tied to the cost of the service, with a reasonable profit margin.

31.      As set forth on Claim Doc's website, "the Audit Program does not use billed charges as a starting point. Instead it utilizes transparent and recognized industry sources, with a particular focus on Medicare and the annual cost reports many Medical Providers report annually to the Centers for Medicare & Medicaid Services (CMS)."

32.      Plaintiffs provided Defendants with the Confidential Information, including proprietary Strategic and Operations Information necessary for the creation and operation of the Audit Program.

33.      The Confidential Information, including the identity of necessary vendors, metrics, protocols, workflow, documents and processes that allow Claims Doc to provide substantial savings on healthcare claims were developed by and provided by Plaintiffs and are protected under the Agreement as proprietary to Plaintiffs.

34.      The Confidential Information, including the identity of necessary vendors, metrics, protocols, workflow, documents, and processes upon which Claim Doc's business is based are trade secrets provided by Plaintiffs to Defendants.

35.      Indeed, the confidentiality and proprietary nature of the Confidential Information were expressly acknowledged in the Agreement and were deemed confidential and proprietary

by virtue of the Agreement itself.

36.     Moreover, the Confidential Information which are the primary architecture behind Claims Doc's Audit Program is valuable for the precise reason that no other competing organization utilizes these same exact metrics, protocols, processes, and documents, and therefore no other competing organization can effectively match the benefits that Claims Doc is offering to its clients.

37.     Thus, the Confidential Information was the primary driver behind Claims Doc's success.

38.     Indeed, between February 1, 2013, the date the Agreement was executed, and September 2015, Claims Doc grew its business substantially using the Confidential Information as the basis for its operations and program.

39.     However, despite Plaintiffs' provision of this Confidential Information, in or about September 2015, without any notice to Plaintiffs, Defendants breached the Agreement by barring Fishbone from access to email and the Claims Doc server, and initially suspending payment of the 15% of the gross revenue required for Defendants continued utilization of the proprietary Confidential Information.

40.     Further, Defendants specifically directed certain clients and customers that Fishbone was no longer to work with them.

41.     In or about early December  2015, Defendants without any notice to Plaintiffs, ceased paying Plaintiffs' percentage of the gross revenue owed under the Agreement.

42.     As a result, Defendants have copied and duplicated the Confidential Information supplied to them by Plaintiffs in breach of the Agreement and continue to use it in the operation of their business in violation of the Agreement.

43. Further, Defendants have usurped the identities of the vendors provided by Plaintiffs and used to develop the Confidential Information, metrics, protocols, workflow and processes which comprise the Confidential Information, and have done so improperly and in breach of Defendants' duty to maintain the secrecy, confidentiality and proprietary nature of the information that is owned by and developed by Plaintiffs.

44. Finally, Defendants continue to make unauthorized use of the Confidential Information in breach of their obligations under the Agreement.

45. Defendants' use and access to the Confidential Information is limited by the Agreement, and Defendants' material breach of the Agreement by failing to pay compensation to Plaintiffs means that Defendants are now continuing to use the Confidential Information on an wholly unauthorized, improper, and inequitable basis.

46. Defendants must, therefore, be restrained from using or retaining *any* of the Confidential Information.

## COUNT I
## REQUEST FOR PERMANENT INJUNCTIVE RELIEF
## (PLAINTIFFS v. DEFENDANTS)

47. Plaintiff hereby incorporates by reference all allegations in its Complaint as though the same were fully set forth herein at length.

48. Plaintiff requests that this Court issue an order permanently enjoining Defendants from utilizing the any and all Confidential Information, including the identity of vendors furnished by Plaintiffs, metrics, workflow, protocols, processes and other trade secrets used in providing its consulting services.

49.     As set forth above, the Agreement specifically identified the metrics, workflow, protocols, processes and trade secrets provided by Plaintiffs to Defendants as Confidential Information, and barred any duplication and copying of such confidential information.

50.     Accordingly, Plaintiffs have a clear right in the protection of the Confidential Information from use, duplication and copying of such information without Plaintiffs' express approval.

51.     Further, as the Confidential Information is the heart of Claim Doc's process, and effectively separates Claim Doc from its rivals in the industry, Claim Doc's use of that Confidential Information without Plaintiffs' express approval will cause Plaintiffs substantial injury.

52.     Plaintiff will be unable to utilize, market or otherwise use the Confidential Information to its full advantage while Defendants unlawfully copy and duplicate it.

53.     Further, such injuries cannot be adequately compensated by damages.  Indeed, each time that Defendants utilize the Confidential Information without Plaintiffs' permission and do so without compensating Plaintiffs' per the Agreement and its subsequent addendum, a new claim arises.  Absent a permanent injunction, Defendants utilization of this Confidential Information will give rise to multiple, on-going injuries, claims and lawsuits.

54.     Finally, greater injury will result from denying this injunction than will result from granting it.  Plaintiffs are the owners of the confidential information that Defendants have effectively usurped.  Defendants, by their own admissions in the Agreement, accept that this information is confidential and proprietary to Plaintiffs.  Accordingly, Defendants use of confidential and proprietary information that belongs to Plaintiffs will result in greater injury than enforcing Plaintiffs rights to use its own confidential and proprietary information.

**WHEREFORE**, Plaintiffs Needham Business Consulting PA, LLC and David Fishbone respectfully request that this Court enter an Order

1. Permanently enjoining Defendants Claim Doc, LLC and Ben Krambeck (including their agents, subsidiaries, successors, and assigns) from utilizing any of the Confidential Information;

2. Requiring Defendants Claim Doc, LLC and Ben Krambeck (including their agents, subsidiaries, successors, and assigns) to destroy all Confidential Information controlled by them or accessible to them within ten (10) days;

3. Requiring Defendants Claim Doc, LLC and Ben Krambeck to aver by way of affidavit their compliance with this Order on penalty of perjury within fifteen (15) days; and

4. Awarding Plaintiffs all legal costs, attorneys' fees and any other relief the Court deems fair and just.

Respectfully submitted,

Dated: 12/30/2015

By: _____

George Bochetto, Esquire
John A. O'Connell, Esquire
Peter R. Bryant, Esquire
**BOCHETTO & LENTZ, P.C.**
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

*Attorneys for Plaintiff*

# Exhibit "A"

Consulting Agreement

THIS AGREEMENT is made effective the 1st day of February, 2013 between Tim Johnson ("Johnson") and Ben Krambeck ("Krambeck"), individually and jointly on behalf of themselves and Claim DOC. LLC., 5635 Ford Street, Norwalk, IA 50211 ("Claim Doc") and Needham Business Consulting PA, LLC. and David Fishbone, its Managing Member, 2211 S. 11th Street, Philadelphia, PA 19148 ("Contractor").

Johnson and Krambeck are licensed producing agents selling self-funded employee health plans and other related products and services and own 100% of the membership interests in Claim Doc.

Johnson and Krambeck formed Claim Doc to provide claim re-pricing and auditing services for employer and union sponsored self-funded health plans sold by them ("Plans") in connection with administrative services provided for the Plans by various third party administrators ("TPAs").

Claims Doc will provide the required claim re-pricing and auditing services to the Plans without using a Preferred Provider Network for facilities, instead substituting an audit and re-pricing methodology based on comparing the facility's own costs by revenue department as reported to CMS with the Medicare Fees for the same services in the same geographic area and applying the allowable claim limits as provided for in the Plan Document governing the Plan ("Claim Review and Audit Program").

Claim Doc requires Contractors' assistance in developing the creating protocols, work flow, and documentation required by Claim Doc to set up and implement the Claim Review and Audit Program, to provide appeal response and coordinate outside legal defense services for the Plans and their covered members,  and to provide consulting services to Claim Doc so that it can provide these services on an ongoing basis to the TPAs to assist them in similar functions and set up in their systems to enable them to utilize the Claim Review and Audit Program and to comply with the Plans' requirements.

Johnson and Krambeck and Claim Doc have agreed to enter into this Agreement with Contractor for Contractor to provide Consulting Services to them to assist in developing the Claim Doc Claims Review and Audit Program and all of the services required to implement and operate them for the TPAs and Plans utilizing them.

1.    Services to be provided by Contractor.  Contractor shall provide such consulting services to Claim Doc as described herein and as requested from time to time.  Said services shall include, but not be limited to, providing consulting regarding various laws, regulations, and contractual requirements associated with Claim Doc's and the TPA's operations for ERISA and non-ERISA self funded health plans and for other employee benefit plans and human resources functions; document preparation; general business consulting regarding operations related to the Claim Doc Claim Review and Audit Program business operations; and identifying and providing introductions to other vendors and contractors who provide services that are essential to the Claims Doc Claim

Review and Audit Program, all of whom are contacts of Contractor and the identity of whom is Contractor's confidential and proprietary information. Contractor shall devote sufficient time to providing said services to Claim Doc. Contractor may engage in providing services to others outside the scope of this Agreement. Krambeck, Johnson, and Claim Doc acknowledge that they would not be able to timely develop and implement the Claim Doc Claim Review and Audit Program or to provide ongoing support and services required by the Program for their TPA clients, without Contractor's services and introductions hereunder.

2.      Compensation for Services. (To be determined prior to starting up the actu. operations of Claim Doc. Krambeck and Johnson agree that they will not commen. Claim Doc operations until Contractor's compensation has been agreed upon . Contractor has shared proprietary and confidential information in order to enable t. formation and start- up of Claim Doc and its business operations.

All invoices and accompanying supporting documents should be delivered to or such other person designated by Claim Doc from time to time at Claim Doc's offices. If Claim Doc disputes an invoice or any charge on an invoice it will provide Contractor with prompt oral and written notification of the reasons for its objection. Claim Doc shall pay any portion of an invoice that is not disputed. Contractor shall be responsible for payment of any Federal, State, or Local or other taxes on the payments received from Claim Doc under this Agreement.

3.      Confidentiality and Privacy of Information. It is understood by the parties that the successful pursuit of new business development prospects is driven by prudent and timely disclosure of certain information at regular intervals throughout the process of investigation and negotiation of contracts or agreements and providing ongoing services thereunder; and that unauthorized use or disclosure of confidential information may cause damage to the party that furnished it.

        A. The following information shall be considered confidential and is covered by this Agreement:

| | |
|---|---|
| Strategic Information, | including but not limited to identification of prospective clients by Claim Doc and any vendors providing services required to create, implement and operate the Claims Review and Audit Program by Contractor including any workflows, protocols, documents, language, letters, contacts, etc. |
| Customer Information, | including but not limited to contact information for current clients, vendors who will provide essential services and products, recent prospects, and any effective agreements therewith; and |

| | |
|---|---|
| Partnership Information, | including but not limited to vendors, brokers, insurance carriers, lenders, and any effective agreements therewith; and |
| Operations Information, | including but not limited to products, services, processes, trade secrets, research and development programs, and marketing materials and strategies, intellectual property; and |
| Policy Information, | including but not limited to insurance policies, coverage, expiration, run-outs, terms, conditions and rates; and |
| Human Resources, | including but not limited to contact information for employees and officers, wages, salaries, bonuses, and benefits. |

1. Information shall not be considered confidential, and shall not be covered by this Agreement if it:

   a) is generally available in the parties' trade or to the public; or

   b) was demonstrably available from one of the parties on a non-confidential basis prior to its disclosure under this Agreement (Krambeck and Johnson acknowledge and agree that Contractor has already provided such information to them prior to the signing and execution of this Agreement, however, such information shall be remain confidential and proprietary and covered by this section notwithstanding such prior disclosure; or

   c) becomes demonstrably available from a third party, provided the third party's disclosure is not in breach of any confidentiality agreement with one of the parties.

2. Each party agrees not to disclose confidential information, and to take all reasonable precautions to prevent disclosure of confidential information to any person other than those employees, officers, directors and agents (including counsel and financial advisors) who have a need to access the data which is relevant to the creation and operation of the Claims Review and Audit Program.   Information shall not be disclosed to any person who is not bound to at least one of the parties by a confidentiality agreement of substantially similar provision.

3. Confidential information shall not be used by any party for any purpose other than those relevant to the brokering, investigation, and negotiation of the proposed Claims Review and Audit Program and providing services in connection therewith to TPAs by Claims Doc. The use of confidential information for competitive advantage, including but not limited to the solicitation of current or prospective clients, the solicitation of vendors providing services for the Claims Review and Audit Program introduced by Contractor, or their employees or officers for hire, and the copying or duplication of

protected processes and workflow disclosed by Contractor to Claim Doc or its TPAs is expressly prohibited.

4. This Agreement, its protections, prohibitions and relief shall survive any termination of this Agreement for any reason that occurs between the parties.

5. In the event that any party is required, in connection with any legal proceeding, to disclose confidential information supplied to it by one of the other parties, prompt notice of such a request shall be given to the party that furnished it, prior to any disclosure pursuant thereto, so that furnishing party may either seek an appropriate protective order or waive compliance with the provisions of this Agreement for such disclosure.

6. In the event that any party breaches or defaults under the terms of this agreement, then the party that furnished the confidential information may seek appropriate injunctive or punitive relief, and if successful, the defaulting or breaching party agrees to pay the relevant costs and expenses, including but not limited to reasonable attorneys fees of the party whose confidential information was misused or disclosed. The moving party will not be required to post bond as a condition for granting such relief.

4. <u>Term.</u>

A.     This Agreement shall be for a term of five (5) years unless terminated sooner by either party for cause. If neither party terminates this Agreement by the end of the first five (5) year initial term, it shall continue thereafter from year to year until terminated by either party. Either party may terminate this Agreement at any time only for cause by sending a written notice at least 60 days in advance of the termination date to the other party. The defaulting party shall have 30 days to cure any such default, in which event, the termination shall not occur. Termination by either party shall be effective on the date specified in the notice of termination, if not cured.

B.     Cause shall mean:

1.     If either party commits and/or demonstrates gross neglect or mismanagement in the conduct of its duties, the harmed party shall provide thirty (30) days prior written notice of its intention to terminate under this subparagraph, and shall specify the reason or reasons therefore;

2.     If one of the parties or one of their principal officers commits or is convicted of a felony under the criminal laws of the United States, any State , or other jurisdiction;

3.     If Claim Doc fails to timely pay any invoice owed to Contractor;

4.     By mutual agreement of the Parties.

5.      Or, if the ownership of either party changes and they are unable to maintain the contractual relationships in- tact.

5.      General. As of the date of this Agreement, Contactor is an independent contractor and not an employee of Claim Doc. Neither Contractor nor Claim Doc shall be construed to be the agent, employee, or representative of the other, except as specified in this Agreement. Nothing contained herein shall be construed to prevent Contractor from independently operating or participating in any other agreement or in providing similar services to another person or entity independent of this Agreement. Nothing contained in this Agreement shall enable Contractor to act on or behalf of Claim Doc in any capacity except to provide the consulting services enumerated herein, which may include providing those services for the Claim Review and Audit Program to Claim Doc clients and TPAs. Neither Contractor nor any of its employees providing services hereunder shall have any authority to bind Claim Doc or to instruct or direct Claim Doc's employees in connection with the operation of Claim Doc's business.

Contractor agrees that the services provided under this Agreement will be performed in a good and workmanlike manner and on a timely basis in accordance with Claim Doc's procedures as modified from time to time.

This Agreement shall be interpreted pursuant to the laws of the State of Iowa. The parties further agree that any arbitration proceeding or lawsuit to enforce the provisions of this Agreement may be brought in Warren County, in the State of Iowa, except for actions to enforce the confidentiality provisions of this Agreement, which may be brought in Iowa or in Philadelphia, Pennsylvania and the parties agree to submit to personal jurisdiction in both locations. The captions of the various paragraphs are for reference only and shall in no way be considered to affect the interpretation of this Agreement.

The waiver by either party of any breach of any provision of this Agreement or warranty or representation herein set forth shall not be construed as a waiver of any subsequent breach of the same or any other provision.

6.      Dispute Resolution. Claim Doc and Contractor agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement.

The sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration except for requests for injunctive relief in the event of a breach of the confidentiality, non-disclosure, or non-circumvent provisions, as the parties do not want the delay or expense of lawsuits. The parties shall mutually agree to the appointment of an impartial arbitrator within 30 days of the written request for the appointment of an arbitrator by any party. In the event that mutual agreement cannot be obtained, then the American Arbitration Association shall appoint an arbitrator. All arbitration proceedings shall be conducted in accordance with the rules of the American Arbitration Association and the award shall be binding, final and conclusive on the parties. Any party may enforce the award rendered by the arbitrator in any court of competent jurisdiction.  ‑

In the event of any dispute as to the interpretation of any provision in this Agreement, there shall not be any inference made for or against either party by reason of such party proposing or modifying any provision.

7. **INDEMNIFY AND HOLD HARMLESS:** Each Party shall indemnify and hold the other parties and their affiliates, subsidiaries, successors, assigns, agents, officers, directors, representatives, and employees harmless from any and all claims, demands, losses, actions, causes of action, damages, judgments, fines, fees (including attorney's fees), penalties, settlements, and any and all other sums of money resulting from its breach of this Agreement; or its violation of any statutes, laws, or regulations, written rules, or guidelines that were provided to one party by the other parties or the gross negligence or willful misconduct on the part of any of a party's employees or agents. The parties hereto agree to abide by all applicable laws and regulations of Federal and State governments having jurisdiction over this Agreement.

WHEREFORE, the parties have signed this Agreement on the day and year set forth above intending to be legally bound.

Claim DOC, LLC.

By: _____
Tim Johnson, Managing Member

_____
Tim Johnson, Individually

_____
Ben Krambeck, Individually

Needham Business Consulting PA, LLC.

By: _____
David Fishbone, Managing Member

_____
David Fishbone, Individually